**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 11-4801**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

FRANESIOUR B. KEMACHE-WEBSTER, a/k/a Bryan Webster,

        Defendant – Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Roger W. Titus, District Judge.  (8:10-cr-00654-RWT-1)

---

Argued: October 26, 2012        Decided: November 28, 2012

---

Before WILKINSON, KING, and SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** David Warren Lease, SMITH, LEASE & GOLDSTEIN, LLC, Rockville, Maryland, for Appellant.  Jonathan Biran, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, LisaMarie Freitas, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A federal jury convicted Franesiour Kemache-Webster of enticing a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b), and the district court sentenced him to life imprisonment. Kemache-Webster now appeals both his conviction and sentence. With regard to his conviction, he contends that the district court (1) erred by denying his motion for acquittal based on insufficiency of evidence and (b) abused its discretion by making several evidentiary rulings. With regard to his sentence, Kemache-Webster claims both procedural and substantive errors and asks this Court to vacate it. Finding no merit in these contentions, we affirm.

I.

In late 2008, Kemache-Webster's daughter "Nikki," who was 14 years old and had been living with her mother, came to live with Kemache-Webster in Washington, D.C. Nikki lived there with Kemache-Webster until March 2010 when Kemache-Webster went to federal prison in Illinois for writing a bad check. Soon thereafter, Nikki moved back in with her mother in Maryland.

From prison, Kemache-Webster sent Nikki emails and letters and placed telephone calls to her that revealed (in graphic detail) that Kemache-Webster and Nikki had maintained an

2

incestuous relationship while she was living with him. The communications indicated that Kemache-Webster intended for the relationship to continue after his incarceration and that he even intended to marry Nikki and conceive children with her, the first of which would be named Ne'Vaeh ("Heaven" spelled backwards). Kemache-Webster also sent Nikki a detailed plan for their reunion, which was to occur immediately after his anticipated release in 2010. This plan specified that Nikki would meet him at a bus station in Washington, D.C., from which they would go to a nearby hotel where "every thought, idea, and desired position [would] be acted upon, assisted and fully accomplished." (J.A. 429.)

Nikki responded to Kemache-Webster's communications in kind. For example, a July 27, 2010 letter from Kemache-Webster to Nikki referenced recent comments from Nikki as follows: "Now as for Ne'Vaeh . . . it sounded like when we last spoke openly and by a letter I got from you on Monday . . . that you are really wanting to get pregnant this year . . . as soon as I am home and we are settled." (S.S.A. 013.)[1] But the plan never

---

[1] This letter was included in the original Joint Appendix, but the copy quality made it illegible. The government included a legible copy in a proposed Second Supplemental Appendix. Kemache-Webster opposed the government's request for leave to file much of the material in the Second Supplemental Appendix, but he did not oppose the government's request to replace illegible copies with legible ones. Therefore, we grant the (Continued)

materialized because Kemache-Webster never got out of prison. Instead, prior to his release, the government discovered these communications and indicted him on one count of enticing a minor to engage in unlawful sexual activity under 18 U.S.C. § 2422(b).

The case proceeded to a three-day jury trial in April 2011, which concluded with a guilty verdict. Several months later, following a sentencing hearing, the district court sentenced Kemache-Webster to life imprisonment.

II.

We turn now to Kemache-Webster's contention that the district court erred by denying his motion for acquittal. The motions challenged the sufficiency of the evidence. We review challenges to the sufficiency of the evidence de novo, United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005), and we must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to support it. Burks v. United States, 437 U.S. 1, 17 (1978). Substantial

---

government's request for leave to file the portions of the Second Supplemental Appendix that are merely legible copies of exhibits included in the prior Joint Appendices. Since the other material in the proposed Second Supplemental Appendix does not affect our analysis of any issue in this appeal, we deny the government's request to file those portions of the Second Supplemental Appendix.

evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of guilt beyond a reasonable doubt. Alerre, 430 F.3d at 693. A defendant bringing a sufficiency challenge "must overcome a heavy burden," United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995), and reversal for insufficiency must "be confined to cases where the prosecution's failure is clear." Burks, 437 U.S. at 17. Here we find that the evidence was sufficient to support Kemache-Webster's conviction.

18 U.S.C. § 2422(b) makes it illegal to "knowingly persuade[], induce[], entice[], or coerce[] any individual [under 18] to engage in . . . sexual activity for which any person can be charged with a criminal offense, or attempt[] to do so." 18 U.S.C. § 2422(b).[2] Thus, there are two prongs to the statute, one for a completed violation and the other for an attempted violation. Both parties here agree that Kemache-Webster was convicted of a completed violation.

---

[2] The statute does not define the words "persuade," "induce," "entice," or "coerce." Therefore, we give them their ordinary meaning. At least as they apply to this case, the words are essentially synonymous, and "the idea conveyed is of one person leading or moving another . . . as to some action [or] state of mind." United States v. Engle, 676 F.3d 405, 412 n.3 (4th Cir. 2012) (quoting United States v. Broxmeyer, 616 F.3d 120, 125 (2d. Cir. 2010)). In this opinion we will use "entice" as shorthand for the collection of these four verbs.

5

In Engle, we explained that the attempt prong "criminalizes an intentional attempt to achieve a mental state—a minor's assent."  Engle, 676 F.3d at 419 (quoting U.S. v. Burk, 652 F.3d 132, 140 (1st Cir. 2011)).  From that holding, it follows that the completed violation prong criminalizes a successful attempt to achieve the victim's assent.  Therefore, to prove a completed violation of the statute, the government must show that the minor actually assented to the illegal sexual activity, but the completion of the act assented to is not required.  Thus, it is irrelevant whether the defendant and the minor have sex because the crime is complete when the minor assents.

On appeal, Kemache-Webster contends that the district court should have granted his motions for acquittal since the evidence against him was insufficient in two ways.  First, he contends that there was insufficient evidence to support a conclusion that Nikki gave her assent to engage in illegal sexual acts with him.  And, Kemache-Webster argues, since the district court only charged the jury on the completed violation prong of the statute, not the attempt prong, the jury could not convict without evidence of Nikki's assent.  Second, Kemache-Webster contends that the jury could not have found that the sexual activity Kemache-Webster proposed to Nikki was illegal since the evidence showed that the activity was to occur in Washington, D.C., and the district court only instructed the jury that

6

incest was illegal in Maryland. We address these two contentions in turn.

A.

Kemache-Webster's first contention—that there was insufficient evidence to support a finding that Nikki gave her assent—is incorrect. Kemache-Webster's letter to Nikki stating that "it sounded like . . . you are really wanting to get pregnant this year . . . as soon as I am home and we are settled" supports the inference that Nikki gave her assent by telling her father that she intended to resume their incestuous relationship and bear his child. (S.S.A. 013.) Thus, a reasonable jury could conclude that Kemache-Webster "enticed" Nikki as required for a conviction under 18 U.S.C. § 2422(b).

B.

Kemache-Webster next contends the district court improperly charged the jury by instructing them on the law of incest from Maryland.[3] The district court charged the law of incest from Maryland. Kemache-Webster did not object to the charge, but he now asserts that the law of Washington, D.C., should have been charged because the evidence at trial included specific plans for post-incarceration sex in Washington, D.C., but no specific

---

[3] Although Kemache-Webster claims he is appealing the denial of his motion for acquittal, he is actually challenging the district court's jury charge.

7

plans to have sex in Maryland. Because Kemache-Webster did not object to the jury instruction at trial, we review for plain error. See Fed.R.Civ.P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."). Applying plain error review, we will not reverse unless Kemache-Webster can establish: "(1) there is an error; (2) the error is plain; (3) the error affects substantial rights; and (4) the court determines . . . that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." In re Celotex Corp., 124 F.3d 619, 630-31 (4th Cir. 1997). Kemache-Webster cannot satisfy this standard.

First, even if we assume error in charging the proper substantive law on illegal sexual activity, it is not clear that such an error is plain. The law of Maryland could be just as appropriate as the law of Washington, D.C., because the jury could have found that the enticing was completed in Maryland or that Nikki had given her assent to a sexual relationship that would have included sex in Maryland, where she lived when she gave her assent. Further, we find no plain error here because Kemache-Webster cannot show that the error affected his substantive rights since incest is illegal in Washington, D.C., just as it is in Maryland. D.C. St. §22-1901.

For these reasons, we reject Kemache-Webster's contention.

8

III.

Kemache-Webster also contends that the district court made three erroneous evidentiary rulings, which we review for abuse of discretion. United States v. Johnson, 617 F.3d 286, 292 (4th Cir. 2010). First, Kemache-Webster contends that the district court abused its discretion by allowing the government to redact some benign portions of written correspondence between Kemache-Webster and Nikki, finding that the redacted portions provided no meaningful context to the admitted portions of the correspondence. Second, Kemache-Webster contends that the district court abused its discretion by refusing to allow him to introduce evidence of Nikki's alleged behavioral problems, which would have supported his claim that he was communicating with Nikki as a sexual partner in an attempt to gain her trust in order to help remedy those behavioral problems. On this point, the district court ruled that Nikki's alleged behavioral problems were not relevant to any issue that the jury needed to decide. Third, Kemache-Webster contends that the district court abused its discretion by allowing a government investigator to provide lay opinion testimony, based upon his review of communications between Kemache-Webster and Nikki, as to the meaning of certain "code" words that Kemache-Webster and Nikki used to refer to their body parts. Here, the district court found that the investigator's testimony was admissible as

opinion testimony that was based on the inspector's personal review of hundreds of emails between Kemache-Webster and Nikki. Having considered Kemache-Webster's arguments and reviewed each of the district court's challenged rulings, we find no abuse of discretion.

IV.

Finally, Kemache-Webster challenges his sentence. In reviewing any sentence, "whether inside, just outside, or significantly outside the Guidelines range," we apply a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). We first must "ensure that the district court committed no significant procedural error." Id. at 51. "If, and only if, we find the sentence procedurally reasonable can we 'consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" United States v. Carter, 564 F.3d 325, 328 (4th Cir.2009) (quoting Gall, 552 U.S. at 51).

On appeal, Kemache-Webster contends that his sentence is both procedurally and substantively unreasonable. As for the procedural challenges, Kemache-Webster contends that the district court (1) disregarded the Sentencing Guidelines, (2)

10

relied on unproven facts and uncharged conduct,[4] and (3) failed to explain and apply the factors set forth in 18 U.S.C. § 3553(a). We have considered these contentions and find them to be meritless. In fact, the record makes clear that the district court relied on the Sentencing Guidelines to calculate the sentencing range and then considered the appropriateness of that range in light of the § 3553(a) factors. Moreover, Kemache-Webster offers no basis for concluding that the district court considered facts that were not supported by ample evidence.

With regard to the substantive challenges, Kemache-Webster primarily contends that the district court abused its discretion by imposing a sentence for enticement of incest that was greater than Maryland's penalty for actual incest. However, the district court noted numerous reasons for imposing a life sentence, including Kemache-Webster's criminal history, attempts to circumvent court orders, and failure to accept the seriousness of his crime. Therefore, we do not find that the length of this sentence represented an abuse of discretion.

---

[4] Kemache-Webster also makes a related argument that allowing judge-found facts to serve as the basis for enhancements to his sentence deprives him of his constitutional right to a jury trial. Kemache-Webster correctly notes that a panel of this Court has already rejected this argument. See United States v. Grubbs, 585 F.3d 793, 799 (4th Cir. 2009).

V.

For the foregoing reasons, we affirm Kemache-Webster's conviction and sentence.

AFFIRMED